Filed 5/25/22  In re Nicole K. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re NICOLE K. et al., Persons Coming Under the Juvenile Court Law. | B313289 (Los Angeles County Super. Ct. No. 21CCJP01589AB) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. GARY K., Defendant and Appellant. | |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Juvenile Court Referee.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly Emling, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Gary K. (father) appeals from a judgment of the juvenile court asserting jurisdiction over his two children, Nicole K. (born December 2008) and Matthew K. (born December 2015) pursuant to section 360 of the Welfare and Institutions Code.[1]  Specifically, father argues that substantial evidence does not support the court's decision to sustain the petition filed pursuant to section 300 and that substantial evidence does not support the trial court's order removing the children from father's custody.

We find the juvenile court's jurisdictional findings and removal order are supported by substantial evidence, and we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY
**Investigation**

The family consists of father, Angelica S. (mother), Nicole and Matthew.[2]

On March 18, 2021, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging emotional abuse by father towards the two children, who were

---

[1]    All further statutory references are to the Welfare and Institutions Code.

[2]    Mother participated in the proceedings below but is not a party to this appeal.

2

then 12 and five years old.  The reporting party indicated that mother had called law enforcement after a verbal argument over finances.  Father became upset and pushed mother with one arm on the right shoulder.  Father began throwing items from a shelf onto the floor.  Mother fled into the bedroom and father banged on the door.  The children were present in the living room, adjacent to the altercation.  Father was arrested for misdemeanor domestic violence, and mother was granted an emergency protective order.  Mother stated that there had been one prior incident of domestic violence that she did not report.  Father was released on bond with a court date of September 9, 2021.  On March 25, 2021, mother obtained a temporary restraining order against father.

On March 24, 2021, a DCFS social worker contacted mother to interview her and the children.  The interviews took place at the family's one-bedroom apartment.  Mother, a hairdresser, had a client in the kitchen.  The social worker was able to privately interview the children in the bedroom.

When asked about the allegations, Nicole appeared hesitant.  The social worker inquired if someone had told her not to talk about what occurred, and Nicole silently nodded her head yes.  She then claimed not to remember what happened.  Eventually Nicole revealed that she thought her parents were arguing about money.  Her dad knocked over some things on the shelf, and her mother ran to the bedroom.  Her dad then calmed down.  Mother called the police, who took her dad away.  Nicole had not seen or talked to her dad since that day. When the social worker asked Nicole if this had happened more than one time, Nicole responded, "I don't know.  I don't like to remember.  They argue sometimes but I don't remember."

3

The social worker attempted to interview Matthew, who was distracted playing games on his phone. Matthew indicated he did not know what happened between his parents and did not know where his father was.

Mother reported that father had behaved this way for many years. Father pushed mother while she was pregnant and told her it was an accident. Mother described father as verbally abusive and rude. When Nicole was about 6 months old, mother attempted to leave father due to daily abuse, but father begged forgiveness and said he would change. Mother stayed with father and things were fine for about a month, until father again became physical with mother, pushing her and throwing items. Once father threw an item that hit her foot. Another time when they were arguing about money, father grabbed her by the clothes and punched her in the head. During another incident, father grabbed mother by her clothing while she was driving. Mother called a women's agency for help but never followed up because father threatened her, telling her she would regret it, that he would never allow a divorce, and that she would "pay for it." Father also threatened to call immigration. While mother was pregnant with Matthew, father became upset and threw a heavy decoration at mother's chest. Mother did not call the police because they were due to go to the hospital that day for Matthew's birth. Mother claimed father had "anger problems" and would get upset over anything.

Regarding the recent incident, mother explained that she had been saving money for needed dental work. Father objected, saying she should not waste money and should not do cosmetic work. Mother said the children were sitting on the couch when father started throwing objects in mother's direction. Mother ran

4

and father grabbed another object.  Mother locked the bedroom door and father started banging on it.  Mother denied that father physically hurt the children.  Mother has had no contact with father since the incident.

Mother admitted she had been arrested for theft before she had children.  Mother denied any mental health or medical issues for the children, but noted Matthew had started having tantrums.  Mother did not want the children learning father's behavior.  She denied any substance use issues, as well as physical and sexual abuse of the children.

The following day, the social worker spoke with father, who stated, "only the money issue is accurate."  Father said mother had been depleting their mutual account of $700 per month for dental implants and expensive dental surgery.  Prior to the argument, father asked mother the balance in mother's private account several times.  Mother had opened the account without his knowledge.  They had texted about the money, and when father returned from work, mother was pestering him about going through the mail.  Father again asked her to show him the balance in her account.  Father admitted he "got louder, not going crazy, not sounding like a maniac or anything, mother still refused."  Father claimed he left mother alone after three requests.  During the encounter father stated some pencils accidentally fell to the ground, but he "never pushed her in my life.  This is pure fabrication on her behalf, never laid a finger on her."

Father said after mother went into the bedroom, he got a beverage and sat on the desk chair.  Father denied attempting to go into the bedroom.  Ten to 15 minutes later, mother came out of the bedroom and escorted police officers into the residence, who

5

arrested father.  Father said the children were on the couch in the living room playing on the tablet and seemed "unfazed" about the incident.

Father reported that he was sleeping in his car, that this was a learning experience for him, and that he desired to "move past this, get beyond this and be better than we once were." Father suggested he could adjust his future behavior and not allow situations to escalate.  Father confirmed that he had been previously arrested but that those incidents were "nothing like this."  Father agreed to stay away from the home temporarily.

Mother filed a declaration in support of her request for restraining order.  The declaration stated that on March 18, 2021, father forcibly pushed her and began throwing objects at her.  Mother declared that father frequently emotionally and physically abused her.  The abuse began when mother was pregnant with her daughter 12 years ago.  When mother threatened to leave father, he responded by telling mother if she left him she would never see her daughter again.  The day mother gave birth to their son, father threw a metal object at mother's chest, which pierced her skin and created a bruise. When father gets upset, he often throws objects at her, and in the past, he has hit her.  Father threatens to harm mother if she leaves him, and she has been afraid of the consequences of leaving him.  He has also threatened to separate her from the family.  The abuse has recently worsened and occurs almost daily.

Los Angeles Police Department log calls revealed the March 18, 2021 incident resulting in father's arrest as the only reported incident.

When mother again spoke with the social worker on April 5, 2021, she confirmed that father was complying with the restraining order and had not contacted mother or the children.

**Section 300 petition and detention**

On April 7, 2021, DCFS filed a section 300 petition on behalf of Nicole and Matthew, alleging that father engaged in violence with mother, endangering the children and creating a risk of serious physical harm as defined in section 300, subdivision (a). The petition also alleged that mother and father failed to protect the children from father's violent conduct pursuant to section 300, subdivision (b)(1). DCFS categorized the family as being high risk for future abuse and neglect due to the alleged violence towards mother by father, in the presence of the children, for many years. Mother reported that father had never hurt the children but had thrown items in the home while they were present.

The detention hearing was held on April 12, 2021. The juvenile court found a prima facie case that the children were individuals described by section 300. The court ordered the children released to mother's home and detained from father. The court ordered DCFS to conduct unannounced visits to mother's home and permitted father to have monitored visits with the children.

On April 15, 2021, counsel for mother filed a request for a restraining order on behalf of mother and the children. The request for a restraining order described the conduct that mother had reported to the social worker in this matter. In addition, it was noted that father had a criminal conviction for battery. The juvenile court granted a temporary restraining order but allowed father court-ordered visitation with the children.

**Jurisdiction/disposition report**

DCFS filed a jurisdiction/disposition report on June 8, 2021. DCFS obtained the parents' criminal histories. Mother was arrested and convicted of petty theft in 2005 and was placed on 12 months' probation. Father was arrested and convicted of misdemeanor battery in 2002 and placed on 36 months' probation. Father also had arrests for driving under the influence. There was not yet a record of father's arrest in March 2021.

A social worker reinterviewed the children at mother's residence on May 20, 2021. Nicole stated she did not want contact with father at all. She was very angry at father and did not feel comfortable with him. Nicole expressed that father pushed and hit mother, saying, "I'm mad at him for what he did to my mom, he hit her, insults her, threatens her to send her back to Mexico and she will never see the kids." The child stated that she is afraid of father. Nicole added that father had hit her with an open hand on her body when she was bad. Father hurt her and caused bruises. Matthew was distracted and did not make any meaningful statement to the social worker. He only smiled and raised his shoulders.

Mother and father were both reinterviewed by telephone on April 28, 2021. Mother requested that the restraining order be permanent, as she was afraid of father. Mother reiterated that she had suffered years of abuse and lived in constant fear, starting during her pregnancy with Nicole. Mother stated that during a recent incident, father threw something at her that hurt her. Mother explained that father would tell her not to call the police as they would send her back to Mexico, and she would never see the children again.

Mother claimed that father had been posting lies about mother on Facebook on a daily basis. Mother added that father sent Nicole a message through Netflix and then posted Nicole's response for him to stay away. Father thought Nicole was being coached or brainwashed by mother.

Father immediately denied the allegations and stated that mother was coaching the children to lie about him. Father said the court admonished mother for coaching Nicole. When asked about his conviction for battery, father stated that it was battery to an adult man, not his spouse. Father described the incident as a bar fight. Father appeared guarded and did not discuss the details of his relationship with mother. Instead, he continued to be defensive and say that mother was coaching Nicole. Father reported he was homeless. Father's goal was to be reunited with the family.

DCFS reported that mother was cooperative and had made efforts to assure the safety and protection of her children. Mother appeared to provide the children with a safe and nurturing environment. DCFS took the position that mother's home was an appropriate residence for the children, and it was in the best interests of the children to remain there.

Father had monitored phone calls every Monday for an hour with Matthew. The phone calls were mostly appropriate, but father continued to inquire of Matthew as to who used the tablet. Father was directed to make Matthew the focus of the visit and not ask about mother or Nicole. Father also attempted to contact Nicole, who did not want any contact with father. Nicole was angry, disappointed, and uncomfortable with father.

In summary, DCFS had "serious concerns on the father's unresolved mental health issues involving his uncontrollable

9

anger and violent behaviors." Father strongly denied his behavior and blamed the mother for lying and coaching Nicole. DCFS recommended that the children be declared dependents of the court and that the petition be sustained. DCFS further recommended that the children be removed from father and released to mother's care under DCFS supervision.

**Adjudication and disposition**

The matter was adjudicated on June 8, 2021. Both parents were present on Webex and represented by counsel. The court took judicial notice of all sustained court orders and findings and the contents of the file.

Counsel for mother asked that the court strike mother from the failure to protect count, as mother was abiding by the restraining order and had no intentions of reconciling with father. Counsel for father argued that the juvenile court lacked sufficient evidence to suggest there was ongoing violence and the court had no evidence to sustain either count. Counsel for the children asked the court to sustain the petition, but to amend it to state that mother was unable to protect—rather than failed to protect—the children. Counsel for the children observed that DCFS met its burden of showing ongoing domestic violence by father against mother, that father held mother's immigration status over her head, and that both children were credible. Counsel for DCFS joined in requesting that the court sustain the petition.

Following the arguments of counsel, the juvenile court found by a preponderance of the evidence that the counts should be sustained as alleged, with the exception that in count b-1 the court changed the language regarding mother from "failure to protect" to an "inability to protect." The court noted that it was

10

clear that the domestic violence had been ongoing, with father the aggressor. The court further noted that Nicole was credible when she described the domestic violence. The court believed that, in contrast to father's accusations against mother, father was the one inappropriately trying to contact Nicole and coach her through social media.

The juvenile court declared the children dependents of the court, to be maintained in mother's custody and removed from father. Mother was ordered to participate in a domestic violence support group. Mother was not to monitor father's visits with the children and was to abide by all protective orders. Father was to participate in a 26-week domestic violence program, parenting, individual counseling, and conjoint counseling with Nicole when recommended by her counselor. Father was permitted monitored visitation with the children.

**Appeal**

On June 9, 2021, father timely appealed from the declaration of dependency and accompanying order removing the children from his custody. Father also sought review of the jurisdictional findings.

## DISCUSSION

Father challenges the sufficiency of the evidence to support the two jurisdictional findings. He also challenges the juvenile court's decision removing the children from his custody.

I.   **Jurisdictional findings**

   A.   *Standard of review*

A juvenile court's jurisdictional findings are reviewed for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We must consider the entire record to determine whether substantial

11

evidence supports the juvenile court's jurisdictional findings. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393 (*Savannah M.*), abrogated on other grounds in *In re R.T.* (2017) 3 Cal.5th 622, 628.)

Under the substantial evidence standard, we determine "if substantial evidence, contradicted or uncontradicted," supports the juvenile court's decision. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193, abrogated on other grounds in *In re R.T., supra*, 3 Cal.5th at p. 628.) "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*Ibid.*)

Substantial evidence is not synonymous with any evidence. (*Savannah M., supra*, 131 Cal.App.4th at p. 1393.) Although substantial evidence may consist of inferences, those inferences must be the products of logic and reason and must be based on the evidence. Inferences that are the result of mere speculation or conjecture cannot support a jurisdictional finding. (*In re James R.* (2009) 176 Cal.App.4th 129, 135 (*James R.*), abrogated on other grounds in *In re R.T., supra*, 3 Cal.5th at p. 628.) The ultimate test is whether a reasonable trier of fact would make the challenged ruling considering the whole record. (*Savannah M., supra*, at pp. 1393-1394.)

**B.** *Substantial evidence supported the jurisdictional finding under section 300, subdivision (a)*

A juvenile court may take jurisdiction of a child under section 300, subdivision (a), if "the child has suffered, or there is a

substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian."

The petition in this matter alleged under count a-1 that father and mother had a history of engaging in violent altercations in the presence of the children. On March 18, 2021, father threw items in mother's direction in the presence of the children, banged on the door when mother locked herself in the bedroom, and was later arrested. On prior occasions, father grabbed mother's clothes and struck her head. Father pushed mother while she was pregnant and threw an object at her chest while she was pregnant. The petition alleged that this violent conduct by father against mother endangers the children's physical health and safety, creates a detrimental home environment, and places the children at risk of serious physical harm, damage and danger.

Father argues that to support jurisdiction under section 300, subdivision (a), there must be evidence in the record of "a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child *or the child's siblings*, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm." (*In re Marquis H.* (2013) 212 Cal.App.4th 718, 724-725.) Father argues no such evidence exists in the record. He asserts there was no showing that he ever caused Nicole or Matthew harm. Father further argues there was no showing of any present risk of harm. Father had voluntarily moved out of the family residence and had showed good insight into avoiding conflict in the future by deescalating any potentially volatile situations.

Father had respected and followed the court's orders requiring that he stay away from the home. Father argues there was no evidence that the children were at current risk of nonaccidental harm as required by section 300, subdivision (a).

Substantial evidence in the record supports the juvenile court's decision that Nicole and Matthew are children described by section 300, subdivision (a). The evidence supports a finding that father and mother engaged in domestic violence while the children were present in the same room. The violence included father hurling objects at mother. Mother also reported that father had previously pushed her, thrown objects at her, struck her head, and threatened her. There was evidence that the violence had been occurring over the course of 12 years. Because the family lived in a one-bedroom apartment and the domestic violence occurred over the time frame of 12 years, starting when mother was pregnant with Nicole, it was reasonable for the juvenile court to infer that this past violence occurred in the presence of the children. In fact, Nicole testified that "father pushes and hits her mother." Nicole further testified that she was afraid of father, who "likes to throw things at her mom." Nicole's testimony, which documented her fear of father's violence, was sufficient to show a risk of harm to the children.[3] The juvenile court was entitled to believe this evidence. Given the long history of violence on the part of father towards mother, with at least some of the violence carried out in the presence of the children, the juvenile court reasonably concluded that the

---

[3]    As DCFS points out, there was also evidence that father grabbed mother while she was driving, which could have endangered the children if they were present, which was not specified.

14

children were at substantial risk of harm inflicted nonaccidentally.

It is established that children's exposure to domestic violence can be a basis for jurisdiction under section 300, subdivision (a). (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 598-599 ["the application of section 300, subdivision (a) is appropriate when, through exposure to a parent's domestic violence, a child suffers, or is at substantial risk of suffering, serious physical harm inflicted nonaccidentally by the parent"].) A child need not suffer actual harm, but must only be at risk of harm. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1435 ["current or future risk to the child is relevant; it is an alternative basis for jurisdiction under section 300, subdivision[] (a)"].)

Father argues that he was following the court's orders that he stay away from mother and the children. However, evidence in the record suggested that father failed to acknowledge his actions and intended to reunite with the family against mother's wishes. Father completely denied mother's allegations, although the juvenile court found them to be credible. When interviewed, father insisted he "has never laid hands on the mother." The court noted, "There's no indication, at this time, that father has any insight into the domestic violence that had occurred in his relationship. He minimizes it." At the same time he denied or minimized his violent actions, father expressed a desire to reunite with mother and the family. Finally, despite a restraining order, there was evidence that father attempted to contact Nicole against her wishes.

Given father's long history of violent behavior, his failure to show any insight into the serious nature of his behavior, and his intention to reunite with the family against their wishes, there

15

was substantial evidence supporting the juvenile court's finding that the children were at serious risk of physical harm under section 300, subdivision (a).

C. ***Substantial evidence supported the jurisdictional finding under section 300, subdivision (b)***

A juvenile court may take jurisdiction of a child under section 300, subdivision (b)(1), where the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness as a result of the failure or inability of his or her parent or legal guardian to protect the child adequately, or as a result of the willful or negligent failure of the child's parent or legal guardian to supervise or protect the child from the conduct of the custodian with whom the child has been left.

The petition alleged identical allegations under count b-1 as alleged under count a-1. Under count b-1, the petition asserted that "[t]he violent conduct by the father against the mother and the mother's failure to protect the children endanger the children's physical health and safety, creates a detrimental home environment, and places the children at risk of serious physical harm, damage, danger and failure to protect."

Father again challenges the juvenile court's finding that the record contained sufficient evidence that the children were at risk of harm from domestic violence. Father points out that circumstances existing at the time of the jurisdiction hearing must show it is likely that the children will suffer serious harm in the future. (*In re Carlos T.* (2009) 174 Cal.App.4th 795, 806.) Father cites *James R., supra*, 176 Cal.App.4th at page 137, abrogated on other grounds in *In re R.T., supra*, 3 Cal.5th at page 628, for the proposition that "[p]erceptions of risk, rather than

16

actual evidence of risk, do not suffice as substantial evidence." Father again argues that he was not having unauthorized contact with mother or otherwise violating the terms of the restraining order. Thus, father argues, at the time of the jurisdiction hearing, there was no evidence showing that the children were at substantial risk of suffering serious future harm. Father cites *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717 (*Daisy H.*), for the proposition that "[p]hysical violence between a child's parents may support the exercise of jurisdiction under section 300, subdivision (b) but only if there is evidence that the violence is ongoing or likely to continue and that it directly harmed the child physically or placed the child at risk of physical harm."

As set forth above, father's acts of throwing objects at mother while the children were present put them at risk of harm. Father's previous acts of aggression towards mother, including pushing, striking, grabbing, and threatening her, also placed them at risk of harm. *Daisy H.* is distinguishable. In *Daisy H.*, the mother pointed to a single act of violence that occurred seven years before the petition was filed that took place outside the presence of the children. (*Daisy H., supra*, 192 Cal.App.4th at p. 717.) That father never acted violently in front of the children, and the parents were separated with no plans to reconcile. (*Ibid.*)

Here, in contrast, father had a 12-year history of abusive acts against mother in the presence of the children, including the recent reported incident. In addition, in contrast to the father in *Daisy H.*, father in this matter expressed a desire to reconcile and reunite with his family. There was evidence that father had attempted to contact Nicole in violation of the restraining order. Father lacked insight into his actions—in fact, he denied the allegations completely. The juvenile court had sufficient evidence

17

before it to conclude that father would continue his attempts to reconcile with his family without addressing the behavior set forth in the petition.

In contrast to *Daisy H.*, this record supported the juvenile court's findings that the children were at current risk of harm under section 300, subdivision (b).

## II. Removal order

### A. *Standard of review*

To remove a child from parental custody under section 361, subdivision (c)(1), DCFS must prove by clear and convincing evidence that there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being, and no reasonable way to protect the child from these dangers in the parent's home. "This is a heightened standard of proof from the required preponderance of evidence standard for taking jurisdiction over a child." (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146 (*Hailey T.*).) "Clear and convincing evidence" has been defined as evidence requiring "a high probability, such that the evidence is so clear as to leave no substantial doubt." (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 695.)

"The standard of review of a dispositional order on appeal is the substantial evidence test." (*Hailey T., supra*, 212 Cal.App.4th at p. 146.) In assessing juvenile court error concerning removal of a child from a parent, we must apply the substantial evidence test "'bearing in mind the heightened burden of proof.'" (*Ibid.*) In other words, we must determine "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020)

9 Cal.5th 989, 995-996.) At the same time, we still must "view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at p. 996.)

## B. *Substantial evidence supports the juvenile court's removal order*

Father argues that in this case, there was no substantial evidence to support the court's finding by clear and convincing evidence that the children's safety required removal from father's custody. Specifically, father argues that substantial evidence did not support the juvenile court's decision that there was a substantial danger to the children's welfare without removal, and that the record showed there were available reasonable measures to safely maintain the children with father.

Father relies on *In re I.R.* (2021) 61 Cal.App.5th 510, 520 (*I.R.*), where the court stated, "A finding of parental abuse cannot alone provide the clear and convincing evidence necessary to justify removing a child. [Citations.] Rather, the juvenile court must determine whether a child will be in substantial danger if permitted to remain in the parent's physical custody, considering not only the parent's past conduct, but also current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." The *I.R.* court recognized the serious threat domestic violence poses to a child's physical and emotional well-being, but found that the level of father's domestic violence in that case did not warrant removal of I.R. from the father's care. The *I.R.* court reasoned, "nothing in the record suggests father has ever been violent or aggressive

19

outside the context of his relationship with mother, nor that he is a generally violent, aggressive, or abusive person.  The nature and frequency of the domestic violence incidents—two instances in which father slapped mother, the second of which also involved him throwing a baby shoe at her—do not support a reasonable inference that he is a generally violent or abusive person." (*Id.* at p. 521.)  The court thus concluded that there was danger to I.R. only if the domestic violence between mother and father was likely to continue.  The father did not live in the family home, had stayed away from mother, and had not expressed a desire or willingness to reconcile with mother.  (*Ibid.*)

The present matter is different.  Here, father lived in the family home for at least 12 years and had engaged in acts of violence toward mother consistently throughout that time.  He had a prior conviction for battery—demonstrating that his violence was not limited to violence against mother.  In addition, father expressed a desire to reconcile with mother and had attempted to contact Nicole in violation of her wishes and in violation of the restraining order.  Father was homeless and appeared to have no plan other than reconciling with mother and the children.  In contrast to the facts in *I.R.*, Nicole expressed that she is afraid of father, stating that father had hit her and hurt her.  The juvenile court in this matter noted that it found Nicole to be particularly credible, stating:

> "Nicole clearly has strong feelings about . . . what she saw happen with her father, what she's seen in the home.  I'm sure that at the detention report Nicole . . . was not able to open up clearly about everything that was happening in the home. And now that father has not been in the home, Nicole has been able to open up more about things that were

occurring and what she has experienced and what she's seen her father do to her mother.

"I would reject father's argument that Nicole is not credible. I do find Nicole to be credible."

Furthermore, father refused to acknowledge ever engaging in domestic violence. As the juvenile court noted, father had not demonstrated "any insight into the domestic violence that had occurred in his relationship." "One cannot correct a problem one fails to acknowledge." (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.) Given father's history of domestic violence, his intention to reunite with his family, and his failure to acknowledge his violent actions, substantial evidence supported the juvenile court's determination that there existed clear and convincing evidence that placing the children in father's custody would create a substantial danger to the children, and that there were no other reasonable means to protect the children.

## DISPOSITION

The judgment and dispositional orders are affirmed.

_____
CHAVEZ, J.

We concur:

_____      _____
LUI, P. J.                    HOFFSTADT, J.